IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID HIGGINS, JOHNNA VOSSELLER,
TANNER McCLURE, DEAN HICKLIN and
JAKE RIFFEL,

                      Plaintiffs,

vs.                                 Case No. 20-1201-SAC-ADM

REV GROUP, INC.,

                      Defendant.

**O R D E R**

Plaintiffs have brought this action seeking a recovery against defendant, their former employer, under breach of contract theories and the Kansas Wage Payment Act (KWPA), K.S.A. 44-312 et seq. Plaintiff's claims concern bonus payments under a MIP ("management incentive plan"), severance payments, and damages under the KWPA. This case is before the court upon defendant's motion for summary judgment. Doc. No. 38.

I. Summary judgment standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Spaulding v. United Transp. Union, 279 F.3d 901,

1

904 (10th Cir. 2002). Such a showing may be made with citation "to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." FED.R.CIV.P. 56(c)(1)(A). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). The moving party may demonstrate an absence of a genuine issue of material fact by pointing out a lack of evidence for the other party on an essential element of that party's claim. Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000)(quoting Adler, 144 F.3d at 671).

II. Uncontroverted facts

Defendant, REV Group, Inc., previously owned a manufacturing enterprise named ElDorado National (Kansas), Inc. (ENK). Effective May 8, 2020, defendant sold ENK to Forest River. There are five plaintiffs in this case. Each was a member of defendant's management team at ENK prior to the sale. All five were at-will employees. Four of them no longer work at ENK: Dean Hicklin was Director of Operations; David Higgins was Vice-President; Tanner McClure was Value Stream Manager; and Johnna Vosseller was Accounting Manager. A fifth plaintiff, Jacob Riffel, still works at ENK as Engineering Manager.

In January 2020, defendant offered plaintiffs the opportunity to participate in the FY 2020 MIP which was a bonus program to encourage good performance.  Under the FY 2020 MIP, performance measures were based on adjusted EBITDA and average net working capital.[1]  These measures could not be completely calculated until the end of the fiscal year, which was October 31.

MIP bonuses accrued on a monthly and quarterly basis, and EBITDA and net working capital data were tracked and reported to employees monthly.  But, MIP bonuses were not paid quarterly.  They were paid on a fiscal year basis.  As a condition of eligibility for a MIP payout, participants had to be actively employed by defendant or one of its subsidiaries at the time of the payout.  This was a written requirement.  See, e.g., Higgins deposition, Doc. No. 39-1, p. 26 of the deposition; Vosseller deposition, Doc. No. 39-4, p. 26 of the deposition.  Plaintiff Vosseller testified, however, that prior to the sale of ENK, the chief financial officer said during a meeting that employees would receive payment of the MIP bonus earned on the two quarters preceding the sale because defendant wanted to do right by their employees.  The plan itself did not address the effect, if any, of involuntary termination due to a change in ownership.

---

[1] The court assumes "EBITDA" means earnings before interest, taxes, depreciation and amortization.

Plaintiffs currently are not actively employed by defendant or one of its subsidiaries and were not so employed on the date of the FY 2020 MIP payout. They have not received a MIP payout under the FY 2020 plan.

Leading up to the sale of ENK to Forest River, Forest River identified which ENK employees Forest River wanted to be conveyed with the sale and those it did not want conveyed with the sale. Those identified to not be conveyed were terminated by defendant before the sale was consummated. Forest River identified plaintiffs as employees to be conveyed. Plaintiff Higgins, however, did not fill out paperwork to become an employee and left his position two working days after the sale when he was advised that Forest River did not have a job at ENK for him. Plaintiff McClure filled out paperwork but also left after two days for which he was compensated by Forest River. Plaintiff Vosseller resigned after six weeks and took a different job. Plaintiff Hicklin worked at ENK for four months after the sale, then was laid off. Plaintiff Riffel continues working at ENK.

Defendant has produced a list showing 2,668 entries for severance payments between November 1, 2017 and November 6, 2020. A number of employees received in excess of $10,000 in individual or cumulative payments. Employees who received severance were terminated for a variety of reasons, including job performance and reduction in force. Plaintiffs Vosseller, McClure and Riffel

4

testified that there was a practice of giving severance pay to employees who were let go by defendant through no fault of their own.

III. Plaintiffs' claims to MIP bonuses are subject to summary judgment.

Plaintiffs contend that they have a right to payment of bonuses under the 2020 MIP plan by virtue of contract and the KWPA.[2]  For the reasons which follow, the court finds that summary judgment should be granted against this claim.

It is clear that "under Kansas law, employers may require continued employment as a condition precedent to an employee's entitlement to various benefits." Core Cashless, LLC v. Kansas Dep't of Labor, 2018 WL 3321173 *10 (Kan.App. 7/6/2018).  This principle has been applied by the Kansas Court of Appeals in cases with facts similar to those now before the court.  See Wesch v. Eldorado Nat'l, Inc., 2001 Kan.App. Unpub. LEXIS 206 *6 (Kan.App. 10/26/2001)(affirming denial of MIP bonus to former employees of ENK where employment was a condition to the bonus); Morton Bldgs, Inc. v. Dept. of Human Resources, 695 P.2d 450, 453 (Kan.App. 1985)(affirming denial of wage claim where 1981 profit sharing plan benefits were denied to two employees who were terminated in

---

[2] The KWPA provides that:  "Whenever an employer discharges an employee or whenever an employee quits or resigns, the employer shall pay the employee's earned wages . . ."  K.S.A. 44-315(a).

January 1982 because employment at the time of the March 1982 distribution date was a condition to receive the benefits).

It is uncontroverted that plaintiffs were informed in writing that: "As a condition of eligibility for MIP payout, participants must be actively employed by REV Group (or one of its subsidiaries) at the time of the payout." Doc. No. 39, p. 4; Doc. No. 40, p. 3. Each plaintiff has so testified. It is also agreed that plaintiffs were not so employed at the time of the 2020 MIP payout.

Even though plaintiffs do not controvert that active employment by defendant or one of its subsidiaries was a condition of eligibility, plaintiffs argue that a fact issue exists because:

> the MIP bonus <u>accrued</u> on a monthly and quarterly basis even though it was not paid out at that time. The purpose for this change was to "lock down" or protect prior quarters where an employee had me[]t goals but had eroding performance at the end of the year. Moreover, the plan did not address the effect of involuntary termination due to a change in ownership. David [Higgins] interpreted the policy as only applying to someone who voluntarily leaves or is involuntarily terminated for cause prior to the MIP payout.

Doc. No. 40, p. 3 (emphasis in original). While the bonus may have accrued on a monthly and quarterly basis, it remains undisputed that payments were not made monthly or quarterly and that plaintiffs were ineligible to receive payments under the 2020 MIP plan because they were not employed by defendant at the time the 2020 MIP bonuses were paid. The failure of the plan to address the contingency of a change of ownership (or other

6

possible reasons for leaving employment with defendant) does not alter the plainly-stated condition precedent for receiving payments through the plan.

Plaintiffs cite Kephart v. Data Systems Intern., Inc., 243 F.Supp.2d 1205, 1229-30 (D.Kan. 2003) to support their position. In Kephart, continued active employment was a condition of receiving bonuses from a defendant employer. The court found that an issue of fact existed as to whether the employer implemented an illegal forfeiture of an earned wage when the employer changed a bonus payment date without notice from April 30 to May 15. An effect of the change was that two employees, whose last day of employment was April 30, did not receive bonuses they otherwise would have received. The court finds that Kephart is distinguishable from the facts in this case because plaintiffs do not allege that defendant changed the employment condition of payment or the time when MIP bonuses were paid.

Plaintiff Vosseller testified that the chief financial officer of ENK, prior to the sale to Forest River, made a representation during a meeting regarding the sale that defendant wanted to do right by their employees and that employees would receive payment for the MIP bonus earned for the two quarters preceding the sale. Such an oral assurance is in the nature of a bare promise and is too vague to alter the written terms of the MIP plan. See EDO Corp. v. Beech Aircraft Corp., 911 F.2d 1447,

7

1454 (10th Cir. 1990)(oral assurances of a continuing relationship insufficient to alter written terms permitting termination of contract for convenience); Kincaid v. Shelter Mut. Ins. Co., 1992 WL 131879 *4 (D.Kan. 5/27/1992)(rejecting oral modification of contract without evidence of independent consideration supporting the oral modification); Marsh v. Coleman Co., Inc., 774 F.Supp. 608, 615 (D.Kan. 1991)(citing general rule that an express contract excludes the possibility of an implied contract of a different or contradictory nature).

Plaintiffs also cite an email from the chief financial officer who stated on May 3, 2020:

> Don't need to put the deal bonuses on the b/s. Rev will pay the[m]. The MIP should be based on YTD vs budget for determining payout % and accrued.

Doc. No. 40-3. The court agrees with defendant that this email refers to a balance sheet inquiry. It does not evidence a mutual agreement to change the terms of the MIP plan and does not create an issue of fact as to whether plaintiffs' eligibility for a MIP bonus payment was conditioned upon employment with defendant on the date of the payout.[3]

Because a reasonable jury could only find that employment with the company at the time of MIP bonus payout was a legal

---

[3] The court further agrees that plaintiff Higgins' testimony that the sale was rushed in part to avoid paying the MIP bonus, is speculative and does not create an issue of fact as to whether employment with defendant at the time of payout was a valid condition precedent for receiving the bonus.

condition precedent for payment and that plaintiffs did not meet this condition, the court shall grant summary judgment against plaintiffs' breach of contract and KWPA claims for FY 2020 MIP payments.

IV. <u>Plaintiffs' severance payment claims are subject to summary judgment.</u>

Plaintiffs claim they have a right to severance payments from defendant under contract principles. The issue presented by the parties is whether there is sufficient evidence of an implied-in-fact contract.

"A contract implied in fact arises from facts and circumstances showing mutual intent to contract." <u>Mai v. Youtsey</u>, 646 P.2d 475 (Kan. 1982). "Because the intent must be mutual, an implied contract cannot be established solely by the employee's subjective understanding or expectation of his or her employment." <u>Peters v. Deseret Cattle Feeders</u>, 437 P.3d 976, 982 (Kan. 2019); see also <u>Berry v. General Motors Corp.</u>, 838 F.Supp. 1479, 1492 (D.Kan. 1993)(a contract implied in fact "must represent the manifestation of mutual assent to be bound"). The "intent of the contracting parties is normally a question of fact for the jury and . . . the determination of whether there is an implied contract in employment requires a factual inquiry." <u>Morriss v. Coleman Co.</u>, 738 P.2d 841 (Kan. 1987). But, "just because a plaintiff alleges an implied-in-fact contract, a jury determination is not

9

always required." Inscho v. Exide Corp., 33 P.3d 249, 252 (Kan.App. 2001). Evidence of mere unilateral expectations will not suffice to support a jury question. Id. at 253.

When considering the existence of an implied contract of employment, "the understanding and intent of the parties should be ascertained from consideration of several factors: (1) written or oral negotiations, (2) the parties' conduct from the beginning of the employment relationship, (3) the usages of the business, (4) the situation and objective of the parties giving rise to the relationship, (5) the nature of the employment, and (6) any other circumstances surrounding the employment relationship that tend to explain or clarify the parties' intentions at the time employment began." Peters, 437 P.3d at 982. The Kansas Supreme Court has examined statements in personnel manuals, verbal and nonverbal conduct of supervisors, and established policies in dealing with employees. Morris, 738 P.2d at 848.

The evidence presented to the court upon summary judgment mostly falls into the catch-all category of "other circumstances surrounding the employment relationship." There is no evidence of written or oral negotiations regarding severance payments. There is also no evidence of practices or customs in the business of manufacturing which would shed light upon a possible understanding between the parties regarding severance payments following the sale of a business. The nature of plaintiffs' employment does not

10

prove or disprove an intent to provide severance payments in the context of this case. Nor is the court aware of any situation or objective of the parties giving rise to the employment relationship which would indicate that the parties intended or did not intend that there be severance benefits paid upon the sale of the business.

Past conduct of supervisors and defendant's records indicate that defendant has made a multitude of severance payments to employees terminated through no fault of their own. Plaintiff Higgins testified that most if not all of the employees that did not convey to Forest River were given some sort of severance and that he personally delivered a severance payment to an employee he terminated prior to the sale who did not convey to Forest River. Doc. No. 40-1, p. 58 of deposition. Other plaintiffs have testified that they had experience in or knowledge of the payment of severance benefits outside the context of ENK's sale. But, there is no evidence of severance payments by defendant to employees who remained at ENK after the sale to Forest River, or of a policy or practice of doing so under the same or similar circumstances.

Plaintiff Higgins testified that he saw a document on defendant's Intranet site which said that if the company was sold and an employee was not offered a position with the company's buyer, then the employee was eligible for severance pay. Id. at

pp. 55, 59-60 of deposition. He did not testify, however, that the document stated severance would be paid to employees who conveyed to and were employed by ENK's buyer, if only for a couple of days, and then were terminated by ENK's buyer.[4] On the other hand, defendant has produced evidence that there was no active policy or practice of paying severance in the event of the sale of a business unit when the employees are expected to remain employed by the successor employer. See Doc. No. 39-6.

The severance cases cited by plaintiffs (Doc. No. 40, pp. 14-15) are not from Kansas and do not involve the type of implied-in-fact contract claims plaintiffs advance here. Therefore, the cases are neither controlling nor persuasive.

The court agrees with the observation in <u>Simpson v. City of Topeka</u>, 383 P.3d 165, 174-75 (Kan. App. 2016) that there are no hard and fast rules governing severance pay and it is important to focus upon the specific provisions in question. Here, the evidence before the court does not support a finding of a mutually agreed policy to pay severance to employees upon the sale of a business unit when the employees are expected to remain employed by the buyer. There is evidence of a general severance pay policy covering employees whose work at ENK was terminated by defendant

---

[4] Plaintiff Higgins denied that he was an ENK employee after Forest River purchased the company. He testified, however, that he did work for the company (but was not paid) and that he was told by a company official on the second day after the sale that he would be let go. Doc. No. 40-1, pp. 47-48 of deposition.

through no fault of the employees. But, those are not the facts here.  While technically, plaintiffs' employment <u>by defendant</u> may have terminated upon the sale of ENK, there was no interruption of plaintiffs' employment at ENK until plaintiffs' were let go by ENK's buyer, not defendant, or they left work voluntarily.[5]  And severance payments were not made by defendant to ENK employees who conveyed to Forest River after the sale.

In sum, plaintiffs have not presented evidence of conduct or a policy which supports a finding that the parties had the mutual intent that severance pay would be made to employees in plaintiffs' situation following the sale of ENK.  Rather, plaintiffs' case relies on evidence of a general practice or policy of paying severance to employees who lost work with defendant through no fault of the employees, and the unilateral expectation that this general practice or policy would extend to the ownership change presented here.  The law, however, is that a unilateral expectation will not suffice to support a claim of an implied-in-fact contract. The court concludes that a reasonable jury could not find upon the evidence shown by the parties that plaintiffs and defendant had an implied contract requiring severance pay to employees expected to convey to ENK's buyer, whose employment with ENK's buyer was then terminated.

---

[5] Of course, to the court's knowledge, plaintiff Riffel has not left employment at ENK.

V. Liquidated damages under the KWPA

Plaintiffs have made a claim for liquidated damages under the KWPA. Plaintiffs' recovery under the KWPA is contingent upon plaintiffs prevailing upon the above-discussed claims. Because defendant is entitled to summary judgment on those claims, the court shall also dismiss plaintiffs' KWPA claims.

VI. Conclusion

For the above-stated reasons, defendant's motion for summary judgment (Doc. No. 38) is granted.

**IT IS SO ORDERED.**

Dated this 9th day of April 2021, at Topeka, Kansas.

>                   s/Sam A. Crow
>                   U.S. District Senior Judge